# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID A. GAMBINO,<br><br>　　Plaintiff,<br><br>v.<br><br>FRANK HERSHBERGER,<br>SHANE SHEETZ,<br>MR. EIRICH,<br>BRETT DODD,<br>LEON BRYAN and<br>7 UNKNOWN OFFICERS AND 3<br>UNKNOWN NURSES,<br><br>　　Defendants. | Civil Action No. TDC-16-3806 |

## MEMORANDUM ORDER

Self-represented Plaintiff David A. Gambino is a federal inmate presently housed at the Federal Correctional Institution-Fort Dix ("FCI-Fort Dix") in New Jersey. Gambino's allegations in this matter arise from the time during which he was housed at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"). On November 22, 2016, Gambino filed a "Motion for a Preliminary Temporary Restraining Order to End Spoliation of Evidence, Preserve Remaining Evidence Recently Deleted Pursuant to FRCP Rule 65," which is pending before the Court. ECF No. 3 ("TRO Motion"). Also pending are Gambino's "Motion to Amend [Dkt 1-1] and [Dkt 3] That Will Replace Original Filing on 11/16/2016" ("Motion to Amend"), ECF No. 6, and his "Motion for Court Order for Recovery and Preservation of E-mails Being Stored at Advanced Technologies Groups LLC" ("Motion for a Court Order"), ECF No. 9.

## BACKGROUND

In February 2016, Gambino was incarcerated at FCI-Cumberland. On February 4, 2016, Gambino sent two emails to friends through a Bureau of Prisons ("BOP") monitored email service. Gambino alleges that on the same day he entertained suicidal thoughts and went to the Mental Health Department. Gambino was placed on suicide watch. Gambino alleges that at some point thereafter, Lt. Eirich sexually abused him and threatened to rape him.

On February 16, 2016, Dr. Hershberger, Chief Psychologist, determined that Gambino could be removed from suicide watch and placed back in the general population. Gambino alleges that he made two suicide attempts that day and was then placed back on suicide watch. He further alleges that prison officials used excessive force against him that same day.

On February 29, 2016, Gambino was again removed from suicide watch. On March 8, 2016, he was transferred to FCI-Fort Dix. According to Gambino, he has filed administrative claims by submitting a Standard Form 95 Claim for Damages, Injury, or Death, which is a prerequisite to filing a suit pursuant to the Federal Tort Claims Act ("FTCA"). The first claim, dated October 13, 2016, alleges "Attempted murder, providing material support for suicide to a suicidal patient, neck and shoulder injury, pain and suffering, abuse of mental health patient, intentional infliction of emotional distress that caused suicide attempts and further degenerated mental health." Mot. TRO Ex. 1 at 25, ECF No. 3-1. The second claim, dated October 15, 2016, states "Denied trial evidence, case studies, strategies and prepared trial strategies for multiple cases going to trial, including materials about the F.C.I. Cumberland included in suits." *Id.* at 24. A third, also dated October 15, 2016, alleges "[c]urrent denial of proper mental health care due to false mental health records, mental health injury while attempting mental health crisis intervention, suicide attempts caused by abuse and conditions, injury to neck and shoulder from

suicide and guards abuse, denial of proper care today, intentional inflection of emotional distress that did end in suicide attempts that ended in injury." *Id.* at 26.

Gambino filed the TRO Motion on November 22, 2016 with the intent to preserve evidence while he "waits for Federal Tort exhaustion at the Federal Bureau of Prisons Level." Mot. TRO at 1. On December 2, 2016, the Court ordered the Government to file an expedited Response to the TRO Motion. In addition, because the Complaint failed to identify what claims, if any, Gambino intended to assert, and because it appeared that portions of the Complaint were missing, the Court granted Gambino 28 days to state whether the Complaint was complete and, if not, to file the missing pages. On December 14, 2016, Gambino filed the Motion to Amend.

On December 23, 2016, the Government filed a Response to the TRO Motion. After reviewing the Government's Response, the Court determined that additional information was necessary in order to assess whether a preservation order was warranted. Consequently, on January 24, 2017, the Court ordered the Government to file a supplemental response including (1) a copy of FCI-Cumberland's video recording retention policy and schedule, (2) a copy of FCI-Cumberland's email retention policy and schedule, and (3) an affidavit or declaration by an official with personal knowledge, accompanied by appropriate attachments such as sample litigation hold letters, listing the specific records or categories of records preserved and a list of all individuals or record custodians who had received a litigation hold letter. The Government filed a Supplemental Response, which included declarations executed by Todd Craig, the BOP Chief of the Office of Security Technology; Lindsey George, Chief of the Information Management Section; and the five named defendants, Chief Psychologist Frank Hershberger, Chief Psychologist Leon Bryan, Staff Psychologist Shane Sheetz, Staff Psychologist Brett Dodd,

Jr., and Special Investigations Supervisor ("SIS") Steven Eirich. Gambino filed a Supplemental Reply.

## DISCUSSION

### I.     Motion to Amend

In the Motion to Amend, Gambino asks to amend the TRO Motion by adding two additional pages. Attached to the Motion are a Table of Contents and an amended Statement of Claim and Relief that Gambino requests be added to the TRO Motion. The Motion to Amend clarifies that Gambino's Complaint does not include claims separate and apart from Gambino's request for a temporary restraining order. Rather, Gambino's intent is to obtain injunctive relief to preserve evidence for anticipated future litigation.

Amendments to complaints are to be freely allowed. Fed. R. Civ. P. 15(a). Leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile. *See Johnson v. Oroweat Foods Co.*, 758 F.2d 503, 509 (4th Cir. 1986). Accordingly, the Motion to Amend is granted.

### II.    TRO Motion

Gambino seeks an Order from the Court directing the BOP to preserve video footage and other evidence while his administrative claims are pending. Specifically, the TRO Motion seeks to enjoin alleged "destruction of evidence known to be needed for a future lawsuit filed in this District Court while the Plaintiff waits for Federal Tort exhaustion at the Federal Bureau of Prisons level." TRO Mot. at 1, ECF No. 3. The TRO Motion lists the evidence to be preserved, which includes emails, copies of Gambino's mental health records, a video recording taken of the Special Housing Unit ("SHU") on February 16, 2016, all video taken on February 16, 2016

of the inside and outside of Unit A-2 and the outside of the SHU, and all video of excessive force perpetrated against Gambino on February 16, 2016. Gambino does not describe why this information will be needed as evidence in future litigation or why he believes this material is at risk of spoliation. The Government opposes the Motion based on its claims that (1) this Court lacks jurisdiction to issue such an order and (2) the order requested is unnecessary.

A plaintiff seeking a preliminary injunction must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Gambino's request for an injunction fails because he has not established a likelihood of irreparable harm. Gambino's Motion, in effect, asserts that the Court must issue an evidence preservation order to avoid irreparable harm to his future legal claims. The Government, however, acknowledges that receipt of the TRO Motion placed it on notice that it should anticipate litigation relating to Gambino's time on suicide watch in February 2016 and that it therefore has a duty to preserve relevant evidence. The United States Court of Appeals for the Fourth Circuit has acknowledged such a duty to preserve material evidence: "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). To prevent spoliation of evidence, the Court may impose a sanction on a party that fails to preserve evidence as required. *Hodges v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004); *Silvestri*, 271 F.3d at 590 ("The policy underlying this inherent power of the courts is the need to

preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth.").

A federal court may also issue preservation orders as part of its inherent authority to manage its own proceedings. *Cognate BioServices, Inc. v. Smith*, No. WDQ-13-1797, 2014 WL 988857, at *6 (D. Md. Mar. 12, 2014); *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 431, 433-34 (W.D. Pa. 2004); *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135 (Fed. Cl. 2004); Manual for Complex Litig. § 11.442 (4th ed. 2004) ("Before discovery starts . . . the court should consider whether to enter an order requiring the parties to preserve and retain documents, files, data and records that may be relevant to the litigation."). The burden is on the party moving for the preservation order to "demonstrate that it is necessary and not unduly burdensome." *Cognate BioServices*, 2014 WL 988857 at 6; *Pueblo of Laguna*, 60 Fed. Cl. at 138. A party seeking a preservation order "must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed—a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past." *Cognate BioServices*, 2014 WL 988857 at 6; *Pueblo of Laguna*, 60 Fed. Cl. at 138; *see also Humble Oil & Refin. Co. v. Harang*, 262 F. Supp. 39, 43 (E.D. La. 1966) (finding that a party seeking an injunction requiring the preservation of documents must demonstrate "that there is real danger that acts to be enjoined will occur"). Courts have found that in instances where a party is already under a duty to preserve material evidence and appears to be fulfilling that duty, there is no need preemptively to issue a separate preservation order. *See Cognate BioServices*, 2014 WL 988857 at 7; *Pueblo of Laguna*, 60 Fed. Cl. at 137-138.

Here, Gambino has not demonstrated that there is a significant risk that any material evidence will be destroyed without a court order. Rather, the Government has acknowledged its

duty to preserve evidence related to Gambino's potential claims and has established that the BOP has taken, and will continue to take, reasonable measures to ensure preservation of all relevant evidence that currently exists. The Supplemental Response provides details on the steps taken by BOP to preserve evidence. BOP provided to all of the named Defendants a memorandum instructing them to preserve emails, medical records, memoranda, and other documents related to their interactions with Gambino in February 2016. SIS Lieutenant Eirich, Chief Psychologist Bryan, Chief Psychologist Hershberger, Staff Psychologist Dodd, and Staff Psychologist Sheetz each executed a declaration acknowledging receipt of the December 19, 2016 memorandum from agency counsel and attaching their signed certifications that they were complying with the preservation requirement as of December 2016. Eirich, Bryan, Dodd, and Hershberger each stated that after receiving the memorandum, they searched their emails and files and found no relevant documents. Sheetz attested that he has "taken steps to preserve all documents that may be relevant to David Gambino's medical care in February 2016, and understand that I am to continue to preserve any relevant documents until instructed otherwise by agency counsel." Decl. of Shane Sheetz ¶ 4, ECF No. 16-7.

Moreover, BOP has established that under its standard record retention policies, the video and email evidence sought by Gambino would have been discarded by the time he filed his Complaint. The Government has provided evidence establishing the time period during which video recordings, emails, and telephone call data are maintained in the ordinary course of business. With respect to video recordings, Todd Craig, the BOP Chief of Security Technology, has stated that when video surveillance at BOP facilities "is not deemed to contain a case-related or category-related event," the content is considered "Temporary" and may be erased or deleted within ten days of the recording. Decl. of Todd Craig ¶ 3, ECF No. 16-1. BOP's written policy

confirms this retention schedule. According to Craig, FCI-Cumberland is equipped with closed circuit television cameras connected to DVR devices with standard storage capacities of 14 to 28 days. Once the recording capacity of a DVR device is reached, "the data loops back and records over older stored data on the device. The over-recording is machine, not user, driven process." *Id.* ¶ 4. According to Lindsey George, Chief of the Management Section in the BOP Policy and Information Management Branch, video recordings are overwritten "depending on the amount of traffic that is captured at the institution and how much space is on the DVRs." Decl. of Lindsey George ¶ 4, ECF No. 16-2.

With respect to inmate emails, George states that the emails, which are sent through the Trust Fund Limited Inmate Communication System ("TRULINCS"), are "held temporarily and deleted 180 days after the date of creation, or when no longer needed for legal or administrative purposes." *Id.* ¶ 3. Thus, the Government's submissions establish that under BOP record retention policies, video recordings or emails relating to the February 2016 incident would have been deleted well before Gambino filed his administrative claims in October 2016 or the Complaint in this case in November 2016. Accordingly, the injunction sought by Gambino would not be likely to prevent the loss of evidence.

Finally, to the extent that Gambino seeks an injunction ordering the preservation of his mental health records, he acknowledges that he received the requested records, but disputes the decision to redact large portions of the records. Redaction of a record in this manner, however, is not spoliation. Thus, there is no likely irreparable harm that would result from a failure to order the preservation of Gambino's mental health records.

Having failed to establish likely irreparable harm that would result from the absence of an injunction requiring evidence preservation, the Court need not address the remaining factors. The TRO Motion will be denied.

**III. Motion for a Court Order**

On January 13, 2017, Gambino filed the Motion for a Court Order, in which he requests that the Court direct Advanced Technology Group, LLC ("ATG") to recover "any and all emails" he sent through the CorrLinks E-Mail service used by the Bureau of Prisons. Mot. Ct. Order at 1, ECF No. 9. Gambino appears to allege that ATG is a private contractor that helps to manage BOP inmate email storage, that ATG erases email data after a period of time, but that the email data can still be recovered if requested in a timely manner.

The Court construes this Motion as another request for an injunction, this time to order the recovery of emails backed up by ATG on the CorrLinks email system. As with the TRO Motion, this request fails because Gambino has not established a likelihood of irreparable harm in the absence of the requested court order. Significantly, the information submitted regarding CorrLinks states that emails older than 30 to 60 days are "automatically purged." CorrLinks Email, ECF No. 9-1. Thus, emails relating to the February 2016 incident were no longer retained by the time Gambino filed this Motion, such that the requested court order would not prevent the loss of the emails in question. Accordingly, the Court denies the Motion.

**IV. Dismissal**

Because the Complaint alleges no cause of action other than the request for an injunction to preserve evidence, the Court's resolution of that issue leaves no remaining claims. Gambino has not asserted his tort claims because, as he acknowledges, he must first exhaust administrative remedies. The Court therefore concludes that the Complaint, even as amended, does not state a

claim upon which relief may be granted and must be dismissed. *See* 28 U.S.C. § 1915(e)(2) (2012) (authorizing a court to dismiss a case brought *in forma pauperis* if the court determines that the action fails to state a claim upon which relief may be granted); 28 U.S.C. § 1915A(b)(1) (permitting a court to dismiss a case filed by a prisoner against a governmental entity or officer that fails to state a claim). Any future FTCA claim must be filed as a new case.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. The Motion to Amend, ECF No. 6, is GRANTED.

2. The "Motion for a Preliminary Temporary Restraining Order to End Spoliation of Evidence, Preserve Remaining Evidence, and Recover Evidence Previously Deleted Pursuant to FRCP Rule 65," ECF No. 3, is DENIED.

3. The "Motion for a Court Order for Recover and Preservation of E-mails Being Stored at Advanced Technologies Groups LLC," ECF No. 9, is DENIED.

4. The Complaint is DISMISSED.

5. The Clerk shall CLOSE this case.

6. The Clerk is DIRECTED to send a copy of this Order to Gambino.

Date: June 8, 2017

THEODORE D. CHUANG
United States District Judge